**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GREGORY D. CRAIN** | **CIVIL ACTION NO. 15-1777** |
| **VERSUS** | **JUDGE: MILAZZO** |
| **SCHLUMBERGER TECHNOLOGY CORPORATION** | **MAGISTRATE: WILKINSON** |

**************************************************************************

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION AND/OR REVISION OF ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PURSUANT TO FRCP RULE 54(b)**

By Order and Reasons filed on May 20, 2016 (Doc. 38), the Court granted Defendant's Motion for Summary Judgment on Plaintiff's claims for age discrimination, disability discrimination, FMLA retaliation, ERISA interference, and ERISA retaliation. The Court, finding that there were disputed issues of material fact on the issue of FMLA interference, denied summary judgment on that claim. Plaintiff respectfully submits this memorandum in support of his Rule 54(b) motion for reconsideration and/or revision on the following claims: (1) interference with ERISA rights; (2) retaliation under ERISA; and (3) retaliation under FMLA.

**Standard of Review on Rule 54(b) Motion for Reconsideration and/or Revision of Order**

FRCP Rule 54(b) provides:

> Any order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"When a party seeks to revise an order that adjudicates fewer than all of the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls…. Under Rule 54(b), the district court

'possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.' However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Southern Snow Manufacturing Co., Inc. v. SnoWizard Holdings, Inc., et al.,* 921 F.Supp.2d 548 (E.D.La. 1/31/2013) (internal quote at fn. 125).

In *Southern Snow, supra,* the district court held that although "'reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly' and the motion must 'clearly establish' that reconsideration is warranted…," *Id.,* at p. 566 (internal citations omitted), reconsideration was appropriate in that case. Here, Plaintiff submits that reconsideration of the ERISA and FMLA issues is also appropriate, for the reasons discussed hereinbelow.

**Argument**

The reasons provided by the Court for the dismissal of Plaintiff's ERISA retaliation and interference claims,[1] and his FMLA retaliation claim, are the same in each instant: that although Plaintiff can meet his burden to establish a prima facie case for each claim, Plaintiff has offered no evidence to rebut Defendant's "legitimate non-discriminatory reason" that Plaintiff's termination was pursuant to a reduction in staff ("RIF") and not motivated, even in part, by Plaintiff's impending surgery and entitlement to leave. Plaintiff respectfully submits that this is inaccurate, and that he has offered substantial and compelling evidence of pretext.

**A. Proximity in time.**

The proximity in time—only eleven days—between the date on which Defendant learned of Plaintiff's impending surgery and likely need for leave, and the date of termination of Plaintiff's

[1] The Court addresses Plaintiff's ERISA interference and retaliation claims in one section, rather than separately (pp. 15-16), and Plaintiff agrees that this is appropriate, as there is no evidentiary or substantive distinction between the elements of these claims when the adverse action was termination.

employment, is evidence of pretext, and presents a material issue of fact that is not appropriate for resolution on summary judgment. This principle has been stated in numerous cases, and significantly, discussed at length in *Montes v. Phelps Dodge Indus., Inc.*, 481 F.Supp.2d 700 (W.D. Tex. 9/27/2006), which is one of the cases cited by this Court in its Reasons, at p. 15, fn. 50.

In *Montes,* the plaintiff asserted both ERISA interference and retaliation claims. ERISA "prohibits an employer from both retaliating against an employee for exercising an ERISA right and preventing an employee from attaining benefits to which he would become entitled." *Id.,* at 713. The court denied summary judgment on both the ERISA interference and retaliation claims, noting the proximity in time between the knowledge and the action. The Court reasoned that just as the temporary proximity can show the purpose (i.e., specific intent) [2] to interfere with the attainment of Plaintiff's rights, that very same "proximity between a claim for ERISA benefits and an adverse action **may be sufficient to show that the defendant's legitimate, non-discriminatory reason for the adverse action is a mere pretext to preventing the plaintiff from receiving ERISA benefits."** *Id.,* at 713, citing, inter alia, *Olitsky v. Spencer Gifts*, 964 F.2d 1471 (5th Cir. 1992).

In *Olitsky, supra,* the plaintiff claimed that his employer fired him within a few months of meeting his vesting requirements under the employer's ERISA pension plan, thereby interfering with his ability to receive certain benefits. The employer argued that the plaintiff was fired for cause, and that the vesting of benefits did not enter into the decision to terminate him. The district

[2]The element of specific intent was addressed by the Fifth Circuit in *Nero v. Industrial Molding Corp.,* 167 F.3d 921 (5th Cir. 1999), rehearing denied, where the Fifth Circuit upheld a jury verdict in favor of the Plaintiff on both his FMLA and his ERISA interference claims. There, as here, the fact issue was whether the decision to terminate Plaintiff had been made before or after the employer learned of his claim for medical benefits. The jury found that the employer made the decision after, and therefore the Fifth Circuit affirmed the verdict, reasoning that a plaintiff "need not show that the sole reason for the termination was to interfere with rights protected by ERISA; he need only prove that a specific intent to violate ERISA partly motivated the employer….A plaintiff may raise the inference of discrimination by direct or circumstantial evidence." P. 927.

court found that the employer's stated reason was a pretext, and the Fifth Circuit affirmed, stating that the district court "chose not to give credence to the testimony of the individuals who made the decision to fire Olitsky, and reasonably inferred from the proximity of the date of firing to the date of vesting that Spencer intended to deprive Olitsky of his benefits. That finding was not clearly erroneous." *Id.*, at p. 1478.

In *Gerdin v. CEVA Freight, L.L.C.*, 908 F.Supp.2d 821 (S.D.Tx. 11/8/2012), discussed in Plaintiff's Memorandum in Support of Motion for Summary Judgment, the Court held that the plaintiff, a female employee terminated within three weeks of her return from maternity leave, had created a genuine issue of material fact that employer's purported reason for termination, a RIF, was pretext for discrimination and dismissed Defendant's motion for summary judgment. In *Gerdin*, the defendant employer submitted that the Plaintiff's position would be terminated as a result of a company wide RIF. In determining that the plaintiff had shown adequate disputed facts that the RIF was a pretext for retaliation, the Court noted the proximity of time between her return and her termination.

In this case, proximity in time is a compelling factor, particularly considering the fact that Plaintiff's termination date was accelerated from late March to February 9.

### B. Why Was Plaintiff's Termination Accelerated, When Was The Decision Made, And What Did Defendant Know When The Decision Was Made?

Plaintiff does not dispute that if Schlumberger made the decision to accelerate Plaintiff's termination and terminate him on February 9, 2015, **before** Defendant knew that he was having surgery and may need and be entitled to FMLA and/or disability leave, then he has no interference claim under ERISA, no retaliation claim under ERISA, and no retaliation claim under FMLA. However, Plaintiff contends that Defendant made the decision on January 29 or 30, 2015, to

terminate him on February 9, 2015, **after** Defendant knew of Plaintiff's circumstances. There is ample evidence to support this belief and the issue should be resolved through trial.

If the Court accepts that the decision to terminate Plaintiff's employment in March, 2015 was made in December, 2014, as reflected on the December RIF list, that does not answer the question of why Plaintiff was later included in the list of people to be terminated in February. This issue is very much in dispute. Plaintiff was not included on a list for termination on February 9 until January 30, two days following his reporting his circumstances to his supervisor and to Human Resources. This is evident from the email of Uzma Babar to Tayo Salako, in which she attaches a list of 86 names, including Plaintiff, to be added to the "23 names from last week."[3] This means that at the time that Plaintiff informed his supervisor and Human Resources of his injury and need for surgery, the only list he was on was the December 9 list for intended termination at the end of March. Yet two days after he advised of his circumstances that may require medical leave, he was on a list to be terminated earlier. Isn't this, at the least, a peculiar enough coincidence to give rise to a question of pretext that must be resolved by witness testimony and the evaluation of credibility, at a full trial on the merits?

Plaintiff has testified from his own experience as a supervisor at Schlumberger that the RIFs are fluid documents, and Defendant agreed. There is no evidence that Plaintiff would have definitively been terminated even in March, given the inability and failure of Defendant to establish definitively that everyone on the December RIF list was terminated at all or terminated on the dates included in the original December RIF document. This, too, is a material issue of fact for the jury. More to the point on summary judgment, it is certainly a question of fact as to why

[3] This email with attachment is an exhibit listed by the parties in the Pre-Trial Order, is bates-stamped D-02571-02573, and is attached here as Exhibit "A". It was also an exhibit to Uzma Babar's deposition.

he was included in the list for termination on February 9, when his inclusion is documented to have occurred on January 30, only two days after he notified Defendant of his circumstances.

Plaintiff further notes that Defendant sent Greg Matherne, Plaintiff's supervisor in Houston, to New Orleans, on very short notice, for the specific reason of terminating Plaintiff, while many other if not all of the employees on the February list were not terminated until later in the week. In Uzma Babar's email of February 9 to managers of employees to be terminated, including Plaintiff's manager, the managers are instructed to "kindly arrange for the [termination] meetings this week, at your convenience. **Greg Crain is already planned for action today, so please exclude."** [Emphasis supplied][4] Defendant was clearly rushing to terminate Plaintiff before he went for his surgery two days later. All of this raises issues of fact. Neither the interference claims nor the retaliation claims can be resolved without resolving these factual issues, which as a matter of law cannot be resolved on summary judgment.

The Court states in the Reasons, at p. 14, that "[n]o reasonable jury could find that Plaintiff was terminated because of an FMLA leave request when the decision to terminate him was made prior to that request." This statement erroneously presumes that it has been established that the decision to terminate Plaintiff <u>on February 9, 2015</u> was made prior to Plaintiff's informing Jan Simpson and others of his impending surgery and possible need for leave. This, however, is far from a proven fact. It is, instead, the dispositive question in this case, on all of the FMLA and ERISA claims—whether Plaintiff's termination date was advanced in order to prevent him from taking FMLA and/or disability leave.

The purported fact that Plaintiff was scheduled in December to be terminated at the end of March does not entitle Defendant to advance that date by six weeks to interfere with Plaintiff's

---

[4] The February 9 email from Uzma Babar, is an exhibit listed by the parties in the Pre-Trial Order, is bates-stamped D-02158-02159, and is attached here as Exhibit "B".

entitlement to medical leave and to protect itself from the cost of paying Plaintiff short-term disability benefits under its short-term disability plan and other benefits, costs and compensation, unless Defendant can somehow prove at trial that Plaintiff would have been terminated on February 9, 2015, regardless of whether Defendant knew of his entitlement to leave. If Plaintiff had taken his FMLA leave or his short-term disability leave, he would have been out for at least twelve weeks, received compensation and/or benefits during that period of time, and there is no way to know on what date, if any, he might have been terminated when he returned.

**C. Defendant's Own Management Contradicts each other.**

Plaintiff discussed in his Memorandum in support of Motion for Summary Judgment that Greg Matherne testified that when he learned a day or two before February 6 that Plaintiff was being terminated on February 9, he asked Uzma Babar if she knew he was having surgery, and she said that she knew. Ms. Babar denies that. Isn't this a credibility determination that should be made by the Court? The mere fact that top-level management and decision-makers have been inconsistent and contradictory in their testimony concerning who knew about Plaintiff's surgery and when they knew it is highly relevant to the issue of whether Defendant's purported legitimate business reason for accelerating Plaintiff's termination is a pretext.

## Conclusion

There is abundant evidence of pretext to be presented to the trier of fact. A reasonable jury or this Court could find, after hearing all of the evidence, that Plaintiff was folded into the February 9 termination in order to prevent him from taking costly medical leave.

The factor of proximity in time precludes summary judgment. The question of the acceleration of Plaintiff's termination and when that decision was made precludes summary

judgment. The question of what Defendant knew and when it knew it precludes summary judgment.

For these reasons, Plaintiff respectfully requests that the Court reconsider its Ruling and reverse the granting of summary judgment on the ERISA claims and the FMLA retaliation claim, so that all four FMLA and ERISA claims may be determined after a full trial on the merits.

Respectfully submitted,

_/s/ Lisa Brener_______________
Lisa Brener, T.A. (#1809)
Chelsea B. Cusimano
Brener Law Firm, LLC
3640 Magazine Street
New Orleans, LA 70115
(504) 302-7802
lbrener@brenerlawfirm.com

*Attorneys for Plaintiff, Gregory D. Crain*

**CERTIFICATE OF SERVICE**

I hereby certify that on 1st day of June a copy of the foregoing Memorandum in Support of Motion for Reconsideration and/or Revision of Order on Defendant's Motion for Summary Judgment, Pursuant to FRCP Rule 54(b) was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

_/s/Lisa Brener____________________________
Lisa Brener

Joseph R. Ward III
Rachel E. Linzy
The Kullman Firm
1100 Poydras Street, Suite 1600
New Orleans, LA 70163